081437 In Re Hickman, Mr. Lentertz. Good morning. May it please the court. We come this morning to discuss a few different matters. In briefing, we largely suggested that the issue is that the board and the examiner both failed to find... You're going to have to speak up a bit, please, sir. Pardon me, sir. In briefing, we argued that the board and the examiner both failed to find an element of the claims that was required, namely that, if I can borrow from the claim language, the remote server which would receive the documents was not there as construed or alternatively that the filing server was not there, the electronic document filing server. In reviewing and preparing for oral argument, it occurred to me that, ultimately, this case either comes down to a missing element or, alternatively, a misconstruction of the claim terms. The board's construction of the claim terms, in our view, is not so much the broadest reasonable interpretation as the broadest possible interpretation. Claim terms must be construed in light of the specification and drawings. I think we made clear in our reply brief that the specification and drawings really do not envision what the board has construed the claims to be. In particular, the board has stated that one can have both the filing server and the receiving server within the agency. In the same building or the same room and they're still separate. That was the board's position, was it not? That's essentially the board's position, yes. What's wrong with that? It's that the, just to make sure I'm stating this properly, the remote server must be separate from the electronic document filing server. Are you separate from me?  But to continue on. We're in the same room. We are in the same room. But to continue on, it's a receiving agency remote server and it's a separate filing server. It's not an agency filing server. In that regard, the filing server really is not intended to be something that the agency has. Applicants argued in various statements to the examiner and the board that part of the value of this invention was that an applicant could work with this filing server and achieve anonymity. If the filing server is part of the PTO or part of the agency receiving the documents, then that anonymity is not provided. I thought the anonymity was with regard to the person sending the message, not with regard to the location of the equipment. Well, the location of the equipment often serves as a key to who the person sending the message is. There are certainly ways to get around that, but this invention is intended to allow someone to achieve anonymity without having to do something other than work from their own computer. In that regard, the remote server then must be separate from the agency and simply must not be part of the agency. Now, Ginter, the prior art that is mainly used by the board and the examiner, really gets away from anonymity. It goes in the opposite direction. It talks about sending data by email. Email is about the antithesis of anonymity. Properly used, it tells you exactly who you received the email from. In that regard, we would submit that either the remote filing server is not found in Ginter or the remote filing server is construed too broadly to be consistent with the specification and the claims. Additionally, the board points out that the other reference, JETCHA, talks about using a webpage for submission of data and suggests that this would be appropriate to combine with Ginter. We submit that that's simply not the case, that Ginter really does teach a way, leads someone away from anonymity. It takes away from the idea of using a webpage. It talks about using electronic mail. It talks about submitting a word processing document. It doesn't talk about using a browser. The claims actually require that you use a browser. Ginter doesn't even use the term browser in the entire application. As a filing date of 1998, there was certainly the opportunity to use it. Its priority date is in 1995, which is well after Netscape had made its splash with its browser. What do you say about the reference that the opposing counsel has called their attention to in Ginter to webpage direct at column 40, line 18 of Ginter? Frankly, we don't know what that is. I've not found a reference to that in my research. Ginter does not explain it. It's mentioned literally once in the entire application. Without more to go on, it's kind of an artifact out there that we don't really have a way to connect to any existing technology or to the technology in one of the two references. Exactly what was intended there, frankly, based on what we can find, I think someone skilled in the art would be puzzled by. They can attempt to draw an inference, but there is nothing to actually go on as to what is meant by the phrase webpage direct. Given how prevalent browsers and similar types of software were at that time, one would think that if Ginter intended a browser, that phrase would have been used instead or that term would have been used instead. The other point, of course, is the question of the constitutionality of the board appointments. I think more than anything what parties differ on here is whether this issue has been waived. The DBC case seems to present precedent that if it's not raised in the PTO, then it's waived completely. Factually, though, that case is very different. DBC did not raise the issue, not only in any statements to the court or the PTO prior to briefing, but it was also not raised in the principal brief for DBC or the reply brief. They petitioned to enter a supplemental brief on this single issue after briefing was otherwise closed. Interestingly, it looks like that brief was not even properly entered in the record. I was not able to obtain it in reviewing the court's files. Here, this issue was brought to the attention of the PTO at the time the appeal was instated. It was discussed among counsel. There was clearly an opportunity for the PTO to resolve this issue without going to this hearing. Therefore, it's factually different. As we've pointed out, the PTO essentially sets up a system where oral argument is discouraged. An applicant will typically only become aware of who is on the board at the time that the opinion is issued in a case. It was discussed with counsel when? It was discussed with counsel on at least two separate occasions. One was prior... Is the case already here? The notice of appeal had been filed, yeah. The notice of appeal had been filed with the PTO in accordance with their regulations. And necessarily with the court as well. But their regulations make clear you either can appeal or you can request reconsideration. They really don't give you a situation where you must request reconsideration before appealing the way one typically does in just about any other situation where one might argue that this type of issue would be raised. And an issue of constitutional dimension like this, I think it's improper to simply discard that where the applicant has chosen to follow what the regulations clearly set forth as an appropriate path for appealing a decision. If it were the only issue to be resolved, I think that the idea that a motion for reconsideration would be appropriate. But in this case, judicial economy and resources to my point of view suggest that it's better to get the prior art issues resolved at the same time as getting the constitutional question resolved. But again, had we needed to, we would have been willing to allow for reconsideration or a remand to get that dealt with. Would you like to say your rebuttal? Yes, please. Alright, thank you. Mr. Kelly? Good morning and may it please the court. Hickman's invention, the process as broadly claimed, requires three computers. A client computer, a document filing server, and an agency computer. The claim specifically recites the relationships between those three computers. The client computer must be remote from the document filing server. The document filing server and the agency computer, meanwhile, need to be separate from one another. And that's specifically what Ginter shows in figure 134 that we've reproduced in our brief. Opposite page 5, excuse me, figure 132. The kiosk shown in the picture is the client computer that Ginter teaches can also be a personal computer. It is remote from the document filing server shown in figure 132 as the trusted go-between. Hickman's word for that same computer is the middleman. Finally, we have the agency computer shown in figure 132 as an examiner's computer. The document is entered at the client computer in Ginter through any convenient electronic means. Those are Ginter's words. Ginter gives examples. Email. Email attachments. The document is then sent to the document filing server, which then does additional processing to make sure everything is in order. It can add a timestamp and then later sent to an agency computer, the examiner's computer. Examiner looks at the document, processes it, examines it, and can send information back via the trusted go-between. The document filing server back to the client computer. The only thing expressly lacking from Ginter is a teaching of a web browser using that exact terminology. And that's just what JECA teaches. And while Hickman says that Ginter's reference to any convenient electronic means, including email, is a teaching away from a web browser, we respectfully disagree with that for the very same reason the board put forth. My problem with Ginter, counsel, is I have read with great interest the 131 claims, the 203 drawings, and it seems to me that in Ginter you could find almost anything you would want to find that would cover almost anything that has anything to do with computers. So it's a very interesting patent. I'm sure that somebody with real expertise might even understand it. Let me ask you a question that's slightly off this, and it may indeed not even be relevant, but it's a puzzle to me. What happens if there is no patent or other written document that is clearly on point when there is an application for a patent? For example, if somebody applied for a patent on how to conduct a conversation, the first person speaks, and then the second person speaks, and then the first person answers. Looking at some of the recent patents, I wouldn't be too surprised to find such an application in the system. You probably aren't going to find a good patent already at record. What would the examiner do in that case if the examiner wanted to raise the obviousness issue? How would that be handled? Well, of course, any prior art is available to the examiner, not just a prior U.S. patent, and I think any example of two people having a conversation, for example, something from a work of fiction where there's two characters talking to one another, that would be prior art if it had a good date on it that could antedate the date of the patent. In other words, prior art needn't be a patent. It needn't be an instruction manual about how to do what's claimed. It can be anything existing that the examiner can bring forth to show that what is claimed was anticipated or rendered obvious. Now, of course, in this case, the court is correct that Ginter is a very expansive teaching and has a lot in it. Ginter does a lot more than what Hickman has claimed. But in Figure 132, Ginter specifically shows a scenario just like Hickman claims, and not just generically, but in the exact patent office example that Hickman has. Now, I'd like to move to the constitutional issue. Could I ask you to comment on the reference that I asked your opposing counsel about the web page direct? What do you take away from this? Your Honor, in that excerpt from column 40 where Ginter says that any convenient electronic means can be used, he puts forth a number of examples. He uses capital letters in those examples, for example, in electronic mail, electronic mail attachment. I read web page direct not to use capital letters to denote some existing software program, but just to be a shorthand for directly through a web page. That's what I take it to mean. I see. And I think that the analysis of the examiner and the board was that whatever this might be, it certainly denotes use of a web page. And accessing a web page would use the same sort of protocols that a web browser would use. Now, contrary to Hickman's statements, the board did not say that this was a teaching of using a web browser. What the board said was that Hickman hadn't challenged the examiner's position that this was enough to establish that web protocols were within Ginter's teaching. Any electronic means is clearly not a teaching away from a web browser. That's the position of the board, and we stand by that position. Now, finally, moving to the constitutionality argument, DBC is clear. The facts of this case are indistinguishable from DBC. Raising something in a docketing statement before this court is raising it before this court. It is not raising it before the agency. We did not contact opposing counsel based on his docketing statement. We contacted him after the blue brief was filed. This court's DBC opinion subsequently came out. It made the issues perfectly clear. There was waiver in this case. There is no factual distinction between Hickman's case and the case in DBC. And for that reason, this court should follow DBC and find there was nothing at all wrong with the board decision here. And no reason to reverse on the grounds that he has raised. What is the procedure before the board with regard to the identification of the administrative judges who will sit on a particular appeal? When does one find out who those judges will be in the course of one's appeal? Your Honor, I don't know that they find out. But I don't believe it's possible to find out any earlier than an oral argument if there is an oral argument, nor any earlier than a board decision if there was no oral argument. There's not a particular date at which a panelist announced an opinion to follow later even if there's no oral argument? I don't know that to be the case, no, Your Honor. But in DBC, this court made clear that even if you don't learn about it until the board decision comes out, you're still before the board. And there's still a procedure to request reconsideration before the board. Now, Mr. Von Tersch may for some reason not want to request reconsideration, but requesting reconsideration of the board is hardly more difficult than coming to this court. There's a specific procedure in place. He's allowed to request reconsideration. And if he had a constitutional argument at that point, that is the time to bring it to the agency, not now. Is there a case, to your knowledge, is there a case pending somewhere in the system on challenging the congressional fix for the appointments? I'm not aware of any case like that before the Patent and Trademark Office. A similar question was asked by the panel in DBC, and this case was mentioned in response. This is the last case that we are aware of that involves the Patent Office and this sort of challenge. And, of course, at this point, there is no question that all three members of this panel are in place properly under any theory right now. For future cases? For future cases, yes. And he had, just like in DBC, he has raised no argument about the qualifications of any of the board judges here. Unless the court has further questions, I'll sit down and stand on our feet. Thank you. I'll try to keep this very brief. A couple of things that I think are worth pointing out. This is one of those rare cases where apparently the Wilson Sporting Goods case applies. The board and the office have both cited Claim 1 as requiring three computers. And they actually cite Claim 5 as merely requiring two computers, even though Claim 5 depends from Claim 1. I point that out primarily because I think it adds to the point that the claim construction in this case is not correct. Additionally, the board and the office takes the position that the response from the agency computer is an office action. And I think it's clear that the response from the agency computer upon filing of an application would appropriately be a filing receipt. And we've pointed that out as well, but I wanted to highlight that. You asked specifically about what could be done if there was just no prior art, but something was clearly obvious. There actually is the opportunity in the office in the manual of patent examining procedure for an examiner affidavit. And I don't think I've ever seen it used, but that procedure is there as well. The other argument that I think I'd like to correct is I believe that the applicant actually has argued the teaching away argument prior to bringing it to the board's attention. And our contention is simply that the board ignored that in the process. It may be that what they're saying is they don't think it was argued convincingly, but the board statement seems to be that it was simply not raised. And I think that's incorrect. In terms of contact before the blue brief, Mr. Kelly and I apparently have different recollections. I don't think they contacted me before the blue brief, but I did actually speak with someone in the office of the solicitor's office about the issues in this case when we were working on preparing the table of contents that would be used for the joint appendix prior to preparation of any of the briefs. And I pointed out at that time that if we wanted this to go back, that we would be willing to consider that. I think those are the main points that I'd like to bring up. Are there any questions I can address? All right. Thank you very much. This is submitted.